11 CIV 7728

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| John T. Metcalf, | |
| Plaintiff, | **CIVIL ACTION NO.** |
| vs. | |
| Sophocles N. Zoullas, Alexis P. Zoullas, Douglas P. Haensel, Jon Tomasson, Joseph M. Cianciolo, David B. Hiley, Thomas B. Winmill, Eagle Bulk Shipping Inc., | **SHAREHOLDER DIRECT AND DERIVATIVE COMPLAINT** |
| Defendants. | |

Plaintiff John T. Metcalf ("Plaintiff"), by his attorney, makes the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiff and his counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.    Plaintiff brings this action against Defendant Eagle Bulk Shipping Inc. ("Eagle Bulk Shipping" or the "Company") and the members of its board of directors (the "Board" and together with the Company, the "Defendants") for their interference with the voting rights of the Fund's stockholders, violations of Section 14(a) of the Securities Exchange Act of 1934 ("the Exchange Act") and the rules and regulations incorporated thereunder, and violations of fiduciary duty and

Marshall Islands corporate law.   This action is related to a case filed in this Court on June 13, 2011 regarding breaches of fiduciary duty.

2.     As described more fully below, Defendants issued a false and misleading proxy to solicit the votes of shareholders to approve a reverse stock split and equity incentive plan that lacked any business purpose and that would allow them to take for themselves and the executive officers 51% of the Company.

3.     By their conduct the individual Defendants have abused the control reposited in them by virtue of their directorial positions, all to the detriment of the Company's public shareholders.

## THE PARTIES

4.     Plaintiff John T. Metcalf is a shareholder of Eagle Bulk Shipping and has been a shareholder continuously since December 2008.  Plaintiff resides in, and is a citizen of, the state of Maryland.

5.     Defendant Eagle Bulk Shipping is a holding company incorporated under the laws of the Republic of the Marshall Islands and headquartered at 477 Madison Avenue in New York, New York.  Its stock is listed on NASDAQ and traded under the symbol "EGLE."   Eagle Bulk Shipping is engaged through its subsidiaries in the ocean transportation of dry bulk cargoes worldwide through the ownership and operation of dry bulk vessels.  The operations of the vessels are managed by a wholly-owned subsidiary of the Company, Eagle Shipping

International (USA) LLC ("Eagle Shipping International"), a Republic of Marshall Islands limited liability company.

6.      Defendant Sophocles N. Zoullas ("Sophocles Zoullas") is the Company's founder, and has served as the Company's Chief Executive Officer and Chairman of the Board of Directors since 2005.  Sophocles Zoullas also serves as the Chief Executive Officer and Chairman of the Board of Eagle Shipping International, and served as President of Eagle Shipping International from 2005 until June 16, 2010 when he resigned and was replaced by his brother Alexis P. Zoullas ("Alexis Zoullas").  Sophocles Zoullas resides in, and is a citizen of, the state of New York.

7.      Defendant Alexis P. Zoullas is a director of the Company, and has served as a director from his appointment to the board by the Company's board of directors on or about April 2007.  In addition to serving on the board, Alexis Zoullas is President of Eagle Shipping International.  Alexis Zoullas resides in, and is a citizen of, the state of New York.

8.      Defendant Douglas P. Haensel ("Haensel") is a director of the Company, and has served since he was appointed by the board on October 6, 2005. Haensel resides in, and is a citizen of, the state of Michigan.

9.      Defendant Jon Tomasson ("Tomasson") is a director of the Company, and has served since he was appointed by the board on or about April 2007. Tomasson resides in, and is a citizen of, the state of Texas.

10.     Defendant Joseph M. Cianciolo ("Cianciolo") is a director of the Company, and has served as a director since December 2005.  Cianciolo resides in, and is a citizen of, the state of Rhode Island.

11.     Defendant David B. Hiley ("Hiley") is a director of the Company, and has served as a director since 2005.  Hiley resides in, and is a citizen of, the state of New Hampshire.

12.     Defendant Thomas B. Winmill ("Winmill") is a director of the Company, and has served as a director since May 2010.   Winmill resides in, and is a citizen of, the state of New York.

## JURISDICTION AND VENUE

13.     This Court has original jurisdiction over this action pursuant to 15 U.S.C. § 78aa and  28 U.S.C. § 1331 and the Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) in that it is a shareholder derivative action filed under rule 23.1 of the Federal Rules of Civil Procedure, in which the plaintiff is from Maryland and all of the defendants are citizens of either New York or states other than Maryland, and the matter in controversy exceeds the sum or value of $75,000 exclusive of interests and costs.  This Court also has jurisdiction pursuant to the

principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367. This action is not a collusive one to confer jurisdiction that the Court would otherwise lack.

14.     Venue is proper in the Southern District of New York pursuant to 15 U.S.C. § 78aa, and 28 U.S.C. § 1391 because Defendant Eagle Bulk is headquartered in New York, and the individual Defendants are all directors of Eagle Bulk, and a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, in the Southern District of New York.

## FACTUAL BACKGROUND

A.     <u>The Company</u>

15.     Eagle Bulk Shipping was founded by Sophocles N. Zoullas and private equity investor Kelso & Co., and issued shares to the public in June 2005. As of October 7, 2011, the Company had 62,663,821 shares outstanding. As reported in the Company's proxy statement dated October 12, 2011, the closing price as of October 12, 2011 was $1.65 per share.

16.     The Company is engaged primarily in the ocean transportation of major and minor bulk cargoes, including iron ore, coal, grain, cement and fertilizer wordwide.

B.    Related Litigation on Excessive Compensation and Other Matters

17.    Plaintiff brought a related derivative shareholder case for breach of fiduciary duty, alleging that beginning in 2008, Eagle Bulk was operated primarily to benefit its officers and directors rather than to increase value to shareholders.  The "quid pro quo" arrangement, in which directors and officers enriched themselves, was manifested by the following:

- huge awards by the directors of their own compensation in a manner that violated the Company bylaws and the governing Marshall Islands corporate statute and that dramatically exceeded prior years' compensation when the Board consisted of representatives of private equity investor, Kelso & Co.;

- huge awards of executive compensation and the execution of a one-sided employment agreement in favor of the CEO awarded by a conflicted board of directors in a *quid pro quo* arrangement with the executive officers;

- the hiring and promotion of Alexis Zoullas, the CEO's brother, in a manner that exacerbated the sudden and exponential rise in executive compensation, with little or no business purpose;

- the suspension of the Company's dividend, an essential element of the Company's business plan, in order to fund the outsized director and officer compensation payments;

- the mysterious dismissal of the Company's auditor and significantly-increased audit-related charges during the immediately preceding period;

- the formation by Kelso and Sophocles Zoullas of Delphin Shipping LLC, a new company that competes directly with Eagle Bulk Shipping, while using Company resources and executive officers to run Delphin's business; the Board's approval of a contract with Delphin that is unfair

6

to Eagle Bulk Shipping; and the formation of a conflicted Conflicts Committee the members of which were individually paid $30,000 per meeting;

- excessive self-compensation decisions despite the fall in stock from $36.24 in May 2008 to $1.65 in October 2011, despite consistent stock underperformance as compared to peers, and despite suspending quarterly dividends to shareholders (director and officer compensation was 60% of net income for the three-year period during which the stock price fell 90%);

- excessive self-compensation decisions despite the fact that the Company has, during the same period, twice defaulted to its primary lender; and

- the adjournment of the 2011 shareholder meeting for no apparent business purpose, and with the self-interested purpose of obtaining shareholder non-binding approval of the *quid pro quo* excessive compensation of the executive officers.

18.    Since Plaintiff originally filed the complaint in the related litigation in June 2011, the Defendants have not made any attempt to remedy the matters complained of, and the stock has continued to decline, falling 50% from June 2011 through the present.

C.    <u>Proxy Solicitation for the Reverse Stock Split and 2011 Equity Incentive Plan</u>

19.    By proxy statement dated October 12, 2011 (the "Proxy Statement"), the Company has notified shareholders that it is calling a Special Meeting to be held on November 17, 2011 to vote on two items.

20.    The first item is an amendment to the Company's Amended and Restated Articles of Incorporation to effect a reverse stock split of the Company's

issued and outstanding common stock by a ratio of between one-for-three and one-for-ten inclusive, to be determined by the Board in its discretion at any time over the following year until the 2012 annual shareholder meeting.

21.    Although the Proxy Statement recommends that shareholders vote "FOR" the proposal, the Board makes no commitment to implement it nor does it commit to the ratio to be used for the proposed reverse stock split. The Proxy Statement discloses that "the Board of Directors will have the authority but not the obligation, in its sole discretion, and without further action on the part of the shareholders, to select one of the approved exchange ratios and effect the approved reverse stock split … at any time after the approval of the Amendment."

22.    The Proxy Statement does not disclose the number of oustanding shares remaining after the reverse stock split. Instead, it discloses that the number *unissued* shares will be between 79,112,060 and 93,733,618, depending on the exchange ratio selected by the Board. However, because the number of authorized shares will remain at 100,000,000, it appears that the number of oustanding shares after the reverse stock split will be in the range of 20,887,940 and 6,266,382.

23.    The second item for which shareholder votes are being solicited is the approval of the 2011 Equity Incentive Plan (the "Plan") that the Board has already adopted on September 30, 2011, subject to shareholder approval. The 2011 Equity Incentive Plan authorizes for issuance 5,900,000 shares of the Company's common

stock in connection with awards granted to directors and officers under the Plan. The number of shares reserved for issuance under the Plan will not be adjusted as a result of the reverse stock split for which shareholder approval is sought. In addition, there is no prohibition to preclude the Plan from issuing all the shares in the first year.

D.   The False and Misleading Proxy Statement

24.   Section 14(a) of the Exchange Act prohibits the solicitation of proxies in violation of the rules promulgated by the SEC.

25.   Under 27 C.F.R. 240.14a-9 ("Rule 14a-9"), the Defendants are prohibited from making any misleading statements or omissions of material fact in connection with the solicitation of proxies from shareholders.

26.   Regulations issued under the Exchange Act set forth specific items that must be included in the Proxy Statement. Item 5(a)(1) of 17 C.F.R. § 240.14a-101 (Schedule 14A. Information required in proxy statement) provides that the Proxy Statement must "[d]escribe briefly any substantial interest, direct or indirect, by security holdings or otherwise, [of directors or executive officers] in any matter to be acted upon (other than elections to office)." In addition, Item 19 of 17 C.F.R. § 240.14a-101 (Schedule 14A. Information required in proxy statement) provides that "[i]f action is to be taken with respect to any amendment of the registrant's charter,

bylaws or other documents as to which information is not required above, state briefly the reasons for and **general effect** of such amendment" (emphasis added).

27.    The Proxy Statement is false and misleading and omits material information in violation of Section 14(a) of the Exchange Act and the rules and regulations promulgated thereunder.  The Proxy Statement fails to disclose to shareholders that, as a result of a one-for-ten reverse stock split and issuances of all shares set aside under the 2011 Equity Incentive Plan, directors and officers may increase their ownership interest in the Company from the current 3.66% to 51% of the outstanding shares.  Nor does it disclose that, even if the Board decides to do a one-for three reverse stock split, issuances under the 2011 Equity Incentive Plan could increase management's ownership interest to 21%.  The Proxy Statement does not disclose that the combined effect of the two proposals is to allow the Board to transfer to itself and the executive officers a controlling stake in the Company.

28.    Accordingly, the Proxy Statement fails to disclose, as required by Item 19 of 17 C.F.R. § 240.14a-101, the combined effect of the reverse stock split in an as-yet-undetermined ratio (to be fixed in the Board's discretion) and the implementation of an unadjusted 5.9 million share incentive plan, so as to permit the directors and officers to potentially gain control of 51% of Company.

29.    In addition, the Proxy Statement fails to disclose, as required by Item 5(a)(1) of 17 C.F.R. § 240.14a-101, that the directors and executive officers have a

substantial direct interest in the matters to be voted on.   Specifically, the directors have an interest in exercising their discretion to fix the reverse stock split ratio as high as possible because the 5.9 million Plan shares would not be correspondingly adjusted and would represent a greater interest in the Company.

30.    The Proxy Statement contemplates that the Board would have complete discretion to choose the reverse stock split ratio, without disclosing that the Board has a conflict of interest in selecting that ratio.  The higher the selected ratio the greater percentage interest the Plan shares would represent.

31.    By failing to disclose these items to shareholders, the Defendants have omitted material information with respect to the shareholder vote on both agenda items, and have rendered the Proxy Statement false and misleading, in violation of Rule 14a-9, and Items 5 and 19 of Schedule 14A.

32.    In addition, the Proxy Statement in a section entitled "Effects on Ownership by Individual Shareholders" states: "The reverse stock split will affect all of our shareholders uniformly and will not affect any shareholder's ownership percentage interests in the Company, except to the extent that the reverse stock split results in any of our shareholders owning a fractional share, in which case such shareholders will receive a cash payment in lieu of any fractional shares, as described in more detail below."  That statement is false and misleading, because it fails to mention a material fact -- that the as-yet-unselected reverse stock split ratio

11

will affect the percentage stake represented by the shares reserved for issuance under the 2011 Equity Incentive Plan. The higher the ratio, the greater percentage ownership in the Company that the 2011 Equity Incentive Plan shares will represent.

33. In addition, the Proxy Statement falsely states that "[t]he Compensation Committee believes that the effective use of stock-based long-term incentive compensation has been integral to the ***Company's success*** in the past and is vital to its ability to achieve ***continued strong performance*** in the future and therefore delivers a portion of each executive's incentive compensation in the form of equity" (emphasis added).

34. This statement is false and misleading, because since 2008, when the Company rewarded significant equity compensation, the Company's performance has been catastrophic. From 2008 to the present, Eagle Bulk's stock price declined from $36.24 to $1.65, and the Company suspended its fundamental policy of paying dividends to shareholders in the fourth quarter of 2008. In addition, during that period, Eagle Bulk has twice defaulted to its primary lender, raising questions about its ability to continue as a going concern. Stock awards for that three-year period to the executive officers totaled: $30,129,390 to CEO Sophocles Zoullas; $3,875,400 to Alexis Zoullas; and $442,800 to CFO Alan Ginsberg; and $1,666,289 to the other directors, for a total of over $36 million during the three-year period of significant decline in shareholder value.

12

35.    Accordingly, the Proxy Statement is false and misleading in violation of Rule 14a-9, because with respect to the vote on the 2011 Equity Incentive Plan, it is material to shareholders that the Company has had *no success* or strong performance, but instead has performed extremely weakly, during the period when the Company made its most significant equity awards.

E.    Breaches of Fiduciary Duty

36.    On September 30, 2011 the Board approved both the amendment to the Company's Amended and Restated Articles of Incorporation to effect the reverse stock split in a ratio between 1-for-3 and 1-for-10 inclusive, and the 2011 Equity Incentive Plan authorizing for issuance 5.9 million shares.

37.    In taking these actions, the Board has breached its duty of loyalty to shareholders, because the net effect of these decisions is that the Board may award to themselves and management an ownership stake in the Company of between 21% and 51%, a substantial increase from their existing combined stake of 3.66%. This ownership stake will allow management to dictate the results of future shareholder votes, disenfranchising the public shareholders.

38.    In addition, there is no business purpose for adopting a new plan to issue equity awards, because there remain over 2 million shares available for issuance under the Equity Incentive Plan of 2009 ("2009 Plan") and close to 3 million shares subject to outstanding awards that have not be exercised, which are

13

available equity compensation, even though the shares issued under the 2009 and older incentive plans will be adjusted for the reverse stock split.  Since 2008, Eagle Bulk's stock price has declined steeply from $36.24 to $1.65.  Providing significant equity awards to directors and officers at the lowest low stock price serves the interests only of management and not the Company or its shareholders.

39.    By approving the reverse stock split and the Plan and using a false and misleading proxy to solicit shareholder votes, the Board has breached its fiduciary duties of loyalty and good faith.

F.    Governing Law and the Company's Charter and Bylaws

40.    The Company is governed by the Marshall Islands Business Corporation Act ("BCA").  Section 13 of the BCA adopts U.S. corporate law to the extent it does not conflict with the provisions of the BCA:

**§13. Construction; adoption of United States corporation law**.

This Act shall be applied and construed to make the laws of the Republic, with respect to the subject matter hereof, uniform with the laws of the State of Delaware and other states of the United States of America with substantially similar legislative provisions. Insofar as it does not conflict with any other provision of this Act, the non-statutory law of the State of Delaware and of those other states of the United States of America with substantially similar legislative provisions is hereby declared to be and is hereby adopted as the law of the Republic, provided however, that this section shall not apply to resident domestic corporations.

41.    The BCA sets forth in Section 61 the standard of care that is applicable to directors and officers:

14

## §61. Standard of care to be observed by directors and officers.

Directors and officers shall discharge the duties of their respective positions in good faith and with that degree of diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions. In discharging their duties, directors and officers, when acting in good faith, may rely upon financial statements of the corporation represented to them to be correct by the president or the officer of the corporation having charge of its books or accounts, or stated in a written report by an independent public or certified public accountant or firm of such accountants fairly to reflect the financial condition of such corporation.

42.     The BCA also sets forth in Section 60 the circumstances under which a corporation is permitted to indemnify its directors and officers for liability as a result of serving as directors or officers, as follows:

## §60. Indemnification of directors and officers.

(2) *Actions by or in right of the corporation.* A corporation shall have power to indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending, or completed action or suit by or in the right of the corporation to procure judgment in its favor by reason of the fact that he is or was a director or officer of the corporation, or is or was serving at the request of the corporation as a director or officer of another corporation, partnership, joint venture, trust or other enterprise against expenses (including attorneys' fees) actually and reasonably incurred by him or in connection with the defense or settlement of such action or suit if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation and except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable for negligence or misconduct *in* the performance of his duty to the corporation unless and only to the extent that the court in which such action or suit was brought shall determine upon application that, despite the adjudication

of liability but in view of all the circumstances of the case such person is fairly and reasonably entitled to indemnity for such expenses which the court shall deem proper.

43.     Consistent with BCA Section 60(2), the Company's Bylaws provide in Article VIII, Section 2, that as to suits brought by or in the right of the Company, "no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable for negligence or misconduct in the performance of such persons duty to the Corporation unless and only to the extent that the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which the court shall deem proper."

44.     There is no exculpation clause in the Company's Articles of Incorporation.

## DERIVATIVE AND DEMAND ALLEGATIONS

45.     Plaintiff brings this action directly in respect of the proxy disclosure claims both under Section 14(a) of the Exchange Act and pursuant to fiduciary disclosure requirements, and derivatively, in the right and for the benefit of the Company, to redress the breaches of fiduciary duty by the Defendants.

46.     As to the derivative claims, Plaintiff will adequately and fairly represent the Company and its shareholders in enforcing and prosecuting its rights.

As to the derivative claims, Plaintiff has not made a demand upon the board of the Company to take remedial action on behalf of the Company against the Defendants, because the Board participated in, approved, and/or permitted the wrongs alleged herein and is not disinterested and lacks independence.

47.    All the director-Defendants were self-interested in adopting the reverse stock split in conjunction with the Plan, because they are eligible to participate in the Plan and may reward themselves 51% of the Company.  Accordingly, demand on the Board to initiate the breach of fiduciary duty claims would be futile.

## FIRST CAUSE OF ACTION

### Violation of Section 14(a) of the Securities Exchange Act of 1934

48.    Plaintiff realleges the preceding paragraphs as if fully set forth here.

49.    Section 14(a) of the Exchange Act prohibits the solicitation of proxies in violation of the rules promulgated by the SEC.

50.    Under Rule 14a-9, the Defendants are prohibited from making any misleading statements or omissions of material fact in connection with the solicitation of proxies from shareholders.

51.    Defendants also have affirmative disclosure obligations under Item 5(a)(1) of 17 C.F.R. § 240.14a-101 to disclose in the Proxy Statement substantial interests of the directors and officers in matters to be acted upon.  Defendants also have affirmative disclosure obligations under Item 19 of 17 C.F.R. § 240.14a-101 to

17

disclose the general effect of any charter amendment on which shareholders are being asked to vote.

52.    The Proxy Statement contains false and misleading statements and omits to state material facts that Defendants had a duty to disclose in connection with the solicitation of proxies for (1) the approval of an amendment to the Company's Amended and Restated Articles of Incorporation to effect a reverse stock split of the Company's issued and outstanding common stock by a ratio of between one-for-three and one-for-ten inclusive, to be determined by the Board in its discretion, and (2) approval of the 2011 Equity Incentive Plan authorizing the issuance of 5.9 million shares.

53.    The Proxy Statement does not disclose as a risk that the combined effect of the two agenda items is to permit Board members to take for themselves and management between 21% and 51% of Company stock.  The Proxy Statement also fails to disclose that the director Defendants have a conflict of interest in selecting the reverse stock split ratio in their sole discretion.

54.    Furthermore, the Proxy Statement makes the misleading statement that the reverse stock split will affect all shareholders uniformly and will not affect any shareholder's ownership percentage interests in the Company.  The statement is misleading, because it doesn't disclose that an increase in the reverse stock split ratio, which is to be determined in the sole discretion of the board within a range of

18

one-for-three and one-for ten, will increase the percentage ownership interest represented by the shares reserved under the 2011 Equity Incentive Plan.

55.    In addition, the Proxy Statement falsely states that stock-based long-term incentive compensation has been integral to the Company's success in the past and is vital to its ability to achieve continued strong performance in the future, when the Company's stock price declined from $36 to $1.65 during the period 2008-2011 when equity compensation was most heavily utilized.

56.    The Defendants knew or should have known that the Proxy Statement was false and misleading and omitted material facts that they had a duty to disclose.

57.    The Defendants provided the information that is contained in the Proxy Statement, have allowed their names to be used in connection with the Proxy Statement and the solicitation of votes, affirmatively recommended in the Proxy that shareholders vote in favor of all the proposals contained in the Proxy, have a substantial financial interest in the outcome of the votes being sought by the Proxy Statement, and have caused the Proxy Statement to be disseminated to shareholders through the use of the United States mails and the means and instrumentalities of interstate commerce.

58.    All of Defendants' misrepresentations and omissions were material and violated Rule 14a-9 and Items 5(a) and 19 of 17 C.F.R. § 240.14a-101. As a result of Defendants' proxy disclosure violations, Plaintiff will suffer irreparable injury, in

that Defendants' misrepresentations and omissions have rendered impossible a fully informed and fair exercise of the shareholder franchise at the Special Meeting. Defendants' material misrepresentations and omissions are an essential link in the transactions contemplated at the Special Meeting, namely the adoption of the amendment to the Company's Articles of Incorporation and the Plan.

59.    Plaintiff is entitled to relief declaring that Defendants have violated Rule 14a-9 and Items 5(a) and 19 of 17 C.F.R. § 240.14a-101, and enjoining Defendants from proceeding further with any efforts to hold the Special Meeting. Plaintiff is entitled to relief declaring and requiring that the Special Meeting be cancelled and rescheduled at a subsequent date to allow a cooling off period to cure Defendants' violations of the Exchange Act proxy disclosure requirements.  In the alternative, if the Special Meeting proceeds, and the proposed actions are approved, Plaintiff is entitled to relief declaring that the shareholder vote was not fully informed and setting aside any shareholder approval of the proposals.  Finally, Plaintiff is entitled to declaratory and injunctive relief preventing Defendants from further  violations of the Exchange Act proxy disclosure requirements.

## SECOND CAUSE OF ACTION

### Breach of Fiduciary – Direct Claim

60.    Plaintiff realleges the preceding paragraphs as if fully set forth here.

61.   Marshall Islands corporate statutory law, pursuant to BCA §13, is to be construed in accordance with the non-statutory corporate law of Delaware.

62.   Under Delaware corporate law, shareholders voting on a corporate action are entitled to a fair and fully informed vote, and the directors and officers owe shareholders a duty of candor.   Accordingly, under Marshall Islands law shareholders are entitled to a fiduciary duty of candor and a fair and fully informed vote.

63.   Plaintiff will suffer irreparable injury, in that Defendants' misrepresentations and omissions have rendered impossible a fully informed and fair exercise of the shareholder franchise at the Special Meeting.

64.   Plaintiff is entitled to relief declaring that the Proxy Statement contains misrepresentations and omissions that interfere with the shareholders' right to a fair and fully informed vote, and enjoining Defendants from proceeding further with any efforts to hold the Special Meeting.  Plaintiff is entitled to relief declaring and requiring that the Special Meeting be cancelled and rescheduled at a subsequent date to allow a cooling off period to cure the effect of the misrepresentation and omissions in the Proxy Statement.  In the alternative, if the Special Meeting proceeds, and the proposed actions are approved, Plaintiff is entitled to relief declaring that the shareholder vote was not fully informed and setting aside any shareholder approval of the proposals.  Finally, Plaintiff is entitled to declaratory and

injunctive relief preventing Defendants from further interfering with the shareholders' right to a fair and fully informed vote.

## THIRD CAUSE OF ACTION

### Breach of Fiduciary Duty – Derivative Claim

65.    Plaintiff realleges the preceding paragraphs as if fully set forth here.

66.    The Defendants owed and owe the Company fiduciary obligations. They have violated the duty of loyalty, candor, and due care, and have not discharged their duties in good faith and with the degree of diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions in adopting the amendment to the Company's Articles of Incorporation to authorize the reverse stock split and adopting the 2011 Equity Incentive Plan and in soliciting shareholder votes using a false and misleading proxy.

67.    The individual-Defendants were self-interested in these decisions which have no valid corporate purpose and constitute waste.

68.    The Company and its shareholders have suffered and will continue to suffer harm as a result of Defendants' wasteful conduct and breaches of fiduciary duties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and derivatively on behalf of Eagle Bulk Shipping, demands judgment as follows:

22

(a)     Declaring that Defendants have violated Section 14(a) of the Exchange Act, and the rules and regulations promulgated thereunder and their fiduciary duties relating to disclosure, declaring that all proxies collected by Defendants based on the Proxy Statement are null and void, enjoining Defendants from any further violations of the proxy disclosure obligations, and requiring Defendants to cancel and reschedule the Special Meeting after an appropriate cooling off period;

(b)     Declaring, in the event that the Special Meeting proceeds and the shareholders approve the reverse stock split and compensation proposals without being informed of the facts alleged in this Complaint, that any such approvals were obtained in violation of Section 14(a) of the Exchange Act, and the rules and regulations promulgated thereunder, and the Defendants' fiduciary duties relating to disclosure, and setting aside the results of any shareholder vote on the proposals;

(c)     Determining that, with respect to the breach of fiduciary duty claim, the suit is a proper derivative action and certifying the Plaintiff as the appropriate representative of the Company for said action;

(d)     Declaring that Defendants have breached their fiduciary duties and committed waste under Marshall Islands law, and enjoining Defendants from any further such violations;

(e)     Awarding damages, together with pre- and post-judgment interest, to the Company with respect to the derivative claim asserted herein;

(f)     Awarding the Plaintiffs the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs and expenses; and

(g)     Granting such other and further relief as the Court deems just and proper.

Dated:  October 31, 2011

Respectfully submitted,

CHITWOOD HARLEY HARNES LLP

By: _____
    Carol S. Shahmoon, CS-8607
    cshahmoon@chitwoodlaw.com
    Gregory E. Keller, GK-4562
    gkeller@chitwoodlaw.com
    1350 Broadway, Suite 908
    New York, NY 10018
    Tel:  (917) 595-4600

    *Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

11 CIV 7728

John T. Metcalf,

Plaintiff,

vs.

Sophocles N. Zoullas, Alexis P.
Zoullas, Douglas P. Haensel, Jon
Tomasson, Joseph M. Cianciolo,
David B. Hiley, Thomas B.
Winmill, Eagle Bulk Shipping Inc.

Defendants.

CIVIL ACTION NO.

DECLARATION OF JOHN METCALF

Pursuant to 28 U.S.C. § 1746, John T. Metcalf declares as follows:

I am the Plaintiff in the above-entitled action.  I am and have been

continuously since December 31, 2008 a shareholder of Eagle Bulk Shipping

Inc.

I have read the Complaint in the above-entitled action and know the

contents thereof, and the same is true to my own knowledge, except as to the

matters therein stated to be alleged upon information and belief, and as to

those matters I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


_____
John T. Metcalf


Executed on:   _____
(date)